### ARTHUR B. HAUPTMAN v. JOHN M. CATLIN AND CATHARINE A. CATLIN.

The mechanics' lien law of 1844 required that the incipient measures to effect a lien should be taken within twenty days after the making of the contract or the commencement of the work. That statute was repealed by the act of 1851, which allows the lien to be filed within six months after the performance of the contract. *Held*, that a laborer or material man, when the latter act had taken effect, might acquire a lien pursuant thereto, at any time within six months after the work was performed or materials were furnished, although the contract therefor was made while the law of 1844 was alone in force.

The statute last enacted applies not only to work performed or materials furnished under contracts made after its passage, but also to work performed or materials furnished, after such passage, by virtue of contracts previously made.

The application of the act of 1851 to labor performed under contracts made before its passage, is not open to constitutional objection, as altering the rights of the parties to the contract so as to impair its obligation;

Nor as taking the property of the owner without due process of law;

Nor as being retro-active in it operation.

The recovery under this statute must, however, be limited to work done or materials furnished after it took effect, on the first of August, 1851.

Where a notice of lien stated a claim against A. and B. his wife, for materials furnished in the erection of a building, and added that such materials were furnished in pursuance of a contract with A. and that the building was owned by B. ;

the notice was held valid, although the contract was in fact made with the husband merely as agent of the wife.

Labor performed and materials furnished for the benefit of the separate estate of the wife, may establish a claim resting in contract, which may be enforced by a proceeding under the lien law of 1851; and this, irrespective of the question whether a married woman can make a contract which would be binding upon her as upon a *feme sole.*

The peculiar proofs adduced in this case, to establish the value of the work and materials for which the lien was claimed, held sufficient.

GENERAL TERM. JULY, 1857.

THIS case came before the court on an appeal by the defendants to the general term, from a judgment of sale, under the mechanics' lien law of 1851, entered upon the report of a referee. The report was the result of a second trial, the plaintiff having previously obtained a judgment, which was reversed at the general term held in May, 1854. The decision then made is reported in 1 E. D. Smith, 729. The referee before whom the cause was first tried having removed from the city of New York, Mr. George C. Goddard was substituted.

It appeared that at some time not earlier than the first nor later than the eighth of July, 1851, the plaintiff, a painter, without any express special contract, and acting at the request of the defendant, John M. Catlin, commenced the performance of labor and the furnishing of materials in painting, glazing, varnishing and graining a dwelling house in the city of New York, which belonged, with the lots of land whereon it stood, to a separate estate of Catharine A. Catlin, the wife of the said John M. Catlin. The work was continued, and was completed in or about the month of March, 1852.

On the 17th of May, 1851, the plaintiff filed with the clerk of the county of New York, a notice of claim, for the purpose of effecting a lien under the act of 1851. This statute, it will be remembered, was passed on the 11th of July, in that year. When, therefore, the labor in question was commenced, and when, as the defendants contended, the implied contract between the parties arose, the lien law of 1844 was in force and required the laborer or material man to file the requisite papers to

secure a lien, within twenty days after the making of the contract or the commencement of the work. The present law, which repealed the act of 1844, was passed July 11, 1851, but did not go into operation until the first of the ensuing August. It was insisted, upon the part of the defendants, that the notice of lien was filed too late ; that if a lien could be acquired at all, under the circumstances of this case, it could only be effected in pursuance of the law in force when the contract was entered into ; and that the statute of 1851, allowing the acquirement of the lien at any time within six months after the performance, could not be applied for the reasons stated in the points of counsel, and discussed in the opinion.

The referee stated in his report, that the greater part of the work was performed subsequently to the first of August, 1851 ; but the proportions were not given, and it did not appear whether or not anything had been allowed, in estimating the amount due, for the period prior to that date. The sum claimed in the complaint was $798, with interest from March 31, 1852. The amount reported for principal and interest was $262 78.

Questions were raised upon the form of the notice of lien. The following is a copy :

" To the clerk of the city and county of New York. Sir : Please to take notice, that I, Arthur B. Hauptman, have a claim against John M. Catlin and Catharine Ann, his wife, amounting to the sum of nine hundred and twenty-three dollars, and that this claim is made for and on account of work, labor and materials done and furnished towards the erection, completion, and finishing of a certain four story and basement brown stone front house ; and that such work, labor and materials were done and furnished in pursuance of a contract or agreement with the said John M. Catlin, which building is owned by Catharine Ann Catlin, and situated in the eighteenth ward of the city o New York, etc., etc. And that I have and claim a lien on said building and the appurtenances, and upon the lots of land upon which the said building stands, pursuant to the provisions of an act of the legislature of the state of New York, entitled an

Act for the better security of mechanics and others, erecting buildings and providing materials therefor, in the city and county of New York, passed July 11, 1851. Dated, New York, this first day of May, 1852. *Arthur B. Hauptman.*"

It was averred in the complaint, and not controverted by the answer, that the premises were the property of the wife, and that the husband contracted with the plaintiff as her agent.

A bill of the particulars of the claim was served in pursuance of the fifth section of the act, made out in the form of an account rendered to both defendants.

To prove the value of the work and materials, in the absence of a special contract for the price, the plaintiff, as correctly stated by his counsel on the argument, "produced the workmen employed by him, who testified to the number of days they were engaged in it, and the quantity of materials which such a house would require under ordinary circumstances, and that this house required more labor, and took a much larger amount of paint, etc., than usual, from having been left a long time unpainted, by which the woodwork had shrunk and become dry, and for the further reason that during the progress of the painting many alterations were made in the house, by taking down woodwork after having been painted by the plaintiff, and substituting other woodwork in its place, which also had to be painted by him, etc. "No evidence of the value of this work was given by the defendant on this trial; and the referee found it was worth $811 75. "For the defence, payments by John M. Catlin, on account of this work, and other work' on houses in Second avenue and East 17th street were proved, to the amount of $805. "Evidence was then given of the value of the work done on those two houses, and the referee adopted the lowest amounts testified to, viz., $48 53 for the house in East 17th street, and $145 for the house in Second avenue. "Work done in Livingston place, $811 75; do. in East 17th street, $48 .53 ; do. in Second avenue, $145 00=$1005 28. "Payments by J. M. Catlin, $805 00. "Amount reported due, exclusive of interest, $200 28."

The referee found, that the building and land in question were the sole and separate estate of the wife; that the labor and materials in question were performed and furnished, at the times before mentioned, pursuant to a contract between the plaintiff and the husband, who acted therein as the agent of his wife, and with her knowledge and consent, and that such contract was made for her use and benefit; that no price was agreed upon, but that the value was $811 75; that the greater part, in amount and value, of the work was performed subsequently to August 1, 1851; that proceedings by the claimant to acquire and perfect a lien had been duly taken, pursuant to the act of 1851; that certain payments had been made, leaving the balance reported due; and that the plaintiff is entitled to a judgment of sale, etc. From the judgment entered upon the report, the defendants prosecuted this appeal.

*William I. Street*, for the defendants, made and argued the following points:

I. The lien in this case was not filed within six months after the work was performed.

II. The contract here was made with the husband, John M. Catlin, in his own right.

The lien as against any interest he might have in the premises, was abandoned at the trial.

The judgment is confined to Mrs. Catlin's interest, which interest is not subject to the lien created by this statute, nor to the judgment.

III. The contract in this case was made and the work commenced more than twenty days before the repeal of the act of 1844, and no lien was attempted to be filed under that law. All right of lien under this contract was therefore waived or had expired.

IV. The contract having been made prior to the act of 1851, that act has no application to it. 1. Because it would alter the rights of the parties to the contract so as to "impair its obligation." (3d Story on Const. Law, 250, &c.; *Bronson* v. *Kin-*

*zie*, 1 How. S. C. R. 311, 319, 20; *McCracken* v. *Hayward*, 2 ib. 608; *Green* v. *Biddle*, 8 Wheaton, 17; *White* v. *White*, 5 Barb. S. C. R. 483.) 2. Because it would take "property" of the owner "without due process of law." 3. Because it would be retro-active. (*Dash* v. *Vankleeck*, 7 J. R. 477.) The statute does not, in terms, include prior contracts, and we submit that by a fair construction, they are excluded. (*Vide Banks* v. *Quackenbosh*, 1 Denio, 128; ib. Court of Appeals, 1 Com. 129.)

V. The bill of particulars served was not proved in any respect. The bill of particulars under this statute is more than an ordinary bill required as a matter of practice. It is in the nature of a proceeding, and is the basis of the issue in the case.

VI. Admitting (which does not clearly appear) that the property on which this lien was placed is the ordinary property of a married woman in which she holds the legal estate. The statute authorizes a lien only when the work is done by virtue of a contract with the owner, and a married woman has no power to make a contract. The word "contract" in the statute means contract in its legal sense, and not a mere equitable obligation. If the estate of Mrs. Catlin in this case be an estate held to her separate use, the objection that it could not be affected by this statutory lien is still stronger, for the estate would then be a mere equitable estate and entirely beyond the province and scope of any proceeding short of the strict equity suit applicable to cases where relief is sought against such estate. The issues under this statute are the orinary issues at common law to collect a simple and ordinary demand. Even a justice of the peace has jurisdiction. The statute has no reference at all to the jurisdiction of the court of equity, which subjects a married woman's separate property to the payment of her debts under certain circumstances. (*Vide Martin* v. *Dwelly*, 6 Wend. R. 9, and cases cited; *Hurd* v. *Cass*, 9 Barb. S. C. R. 366; 1 Kent's Com. 464; *Snyder* v. *Snyder*, 3 Barb. S. C. R. 62; *Holmes* v. *Holmes*, 4 ib. 296; *Westervelt* v. *Gregg*, 2 Kernan, 202.)

VII. This statute being in derogation of the common law,

cannot be equitably extended or enlarged by construction. (*Sharp* v. *Spier*, 4 Hill's Rep. 84 ; *Taylor* v. *Porter*, ib. 140 ; *In Matter of Denny*, 2 ib. 220 ; *Veltman* v. *Thompson*, 3 Coms. R. 441, 2.) Liens are viewed with jealousy by the law ; *Rushforth* v. *Hadfield*, 7 East, 228, 9.

VIII. The report is against evidence.

*Holbert Smales*, for the plaintiff, made and argued the following and other points :

I. John M. Catlin was a proper party to the action. (Code, § 114.)

II. This is a proceeding *in rem* of an equitable character, to enforce a lien given by the statute ; and this lien attaches to a legal or equitable interest of the owner. (*Gay* v. *Brown*, 1 E. D. Smith, 725.)

III. Mrs. Catlin, although a *feme covert*, had full power, either personally or by agent, to enter into such a contract as contemplated by the lien law. It was a contract for the benefit and on the credit of her separate estate. (*Methodist Episcopal Church* v. *Jaques*, 17 Johns. R. 548 ; *Dyott* v. *North American Coal Co.* 20 Wend. 570, 573 ; *S. C.* 7 Paige, 9, 14 ; *Gardner* v. *Gardner*, ib. 112, 116 ; *Cumming* v. *Williamson*, 1 Sandf. Ch. 17, 25 ; *Vanderheyden* v. *Mallory*, 1 Coms. 453, 462.) Courts of equity will enforce the contracts of a *feme covert* to sell or mortgage her separate estate. (*Grigsby* v. *Cox*, 1 Ves. 517 ; *Stead* v. *Nelson*, 2 Beav. 355 ; *Wainwright* v. *Hardisty*, ib. 363.)

IV. The proceeding is of an equitable character. The legislature, in likening these proceedings to those in civil actions for recovery of money, must be deemed to have reference to actions for money secured by liens of similar character. (*Miller* v. *Moore*, 1 E. D. Smith's R. 739, 746 ; *Doughty* v. *Devlin*, ib. 642, 644.)

V. The proceeding to enforce the lien being of an equitable character, and the lien being binding on equitable interests or estates, must embrace equitable contracts as well as those bind-

ing at law. It cannot be a mere common law claim. 1. The same principles which apply to the ownership must govern as to the contract. 2. A court of common law jurisdiction, exclusively, has no power or means to enforce such a claim. 3. At common law the judgment would only be a general lien on all the defendant's property, not a specific lien on the premises in question. 4. The common law execution would only authorize a sale of the right, title and interest of the party at the date of the judgment, and, 5. It would not bind equitable estates.

VI. The proof on the part of the plaintiff was sufficient, and was in accordance with the bill of particulars. There was actual proof of 250 days' work. There was proof of each kind of material charged for having been used; and on refusal of the referee to admit the books as evidence, the only possible other proof was given—that of the quantity required for such a work. There was no proof whatever by the defendants as to the value of the work or materials.

VII. The plaintiff had a valid lien under the law of 1851, which took effect on the 11th of July in that year, and repealed the act of 1844. It is not the contract that creates the lien, but the furnishing labor and materials on the building attached to the freehold. (*Getty* v. *Casey*, 15 Ill. R. 189.)

VIII. The notice of lien was sufficient. It set forth correctly every particular required by the statute. (Lien Law, § 4.)

IX. The notice was filed within the six months required by the statue of 1851. This contract is an entirety, and it is sufficient if the claim be filed within six months from the last act done in execution of it. (*Bartlett* v. *Kerigan*, 19 Penn. (7 Harris), 341; *Sparsley* v. *Flanagan*, 22 Penn. (10 Harris), 489.

X. The appeal should be dismissed with costs.

By the Court. Brady, J.—The referee finds that on divers days from the first day of July, 1851, until about the month of March, 1852, the plaintiff performed labor and furnished materials in painting, glazing, varnishing and graining the house mentioned in the complaint.

At the time of the commencement of the work, the act of 1844 for the better security of mechanics and other erecting buildings and furnishing materials therefor in the city and county of New York (Session Laws, 1844, page 339), was in force. The second section of that act required the incipient measures to effect the lien created, to be taken within twenty days after the making of the contract or commencing the performance of such labor or the furnishing of said materials. The act of 1844 was repealed by the act of 1851, passed on the 11th of July in that year (Session Laws, 1851, p. 953), and the plaintiff omitted to take any proceedings to perfect or acquire the lien secured by the act of 1844 within the twenty days allowed thereby. The act of 1851 took effect twenty days after its passage, no different time being therein prescribed (1. Rev. Stat. 157), and the plaintiff within the six months after the performance of his work as prescribed by that act, filed his lien.

It is urged against the plaintiff's recovery in this action, which is a proceeding to enforce that lien, that the contracts having been made prior to the act of 1851, that act has no application to it, because it would alter the rights of the parties to the contract so as to impair its obligations, would be retro-active, and would take the property of the owner without due process of law. I think this objection cannot be sustained. " A state may regulate at pleasure the modes of proceeding in its courts in relation to past contracts as well as future, and it must reside in every state to enable it to secure its citizens from unjust and harassing litigation, and to protect them in those pursuits which are necessary to the existence and well-being of every community." (*Bronson* v. *Kinsie*, 1 How. U. S. R. 311, per TANEY, Ch. J.; *M'Cracken* v. *Haywards*, 2 ibid. 608.)

The statute in question does not in any sense relieve the party contracting from the performance of his agreement, or deprive the employer of any existing right to enforce it in all respects, or take the property of the owner without due process of law ; and I cannot understand in what aspect the case presents itself for the application of these constitutional objections. The remedy is changed, it is true, and a lien created upon the building,

which is the result in part or in whole of the labor performed, or toward the construction of which the materials are furnished; but nothing more, and to this extent the power of the legislature cannot now be doubted. I think, however, that under the act of 1851, the recovery must be limited to the work done or materials furnished after it took effect, and that the plaintiff cannot enforce any lien thereunder, for any work done or materials furnished prior to August 1st, 1851, on which day that act took effect.

The first section does not apply to work performed or materials furnished under contracts only made thereafter, but as well to work done or materials furnished thereafter by virtue of any existing contract. It cannot have been the intention of the legislature to abrogate the law of 1844, and by the passage of the act of 1851 to deprive the mechanic and material man of the protection designed, where the contract was made but not entirely performed when the latter act was passed.

For these reasons, I think that it cannot be held that the plaintiff acquired no rights under the act of 1851, because his contract was made when that act was passed, either upon the phraseology of the statute itself, or the intention of the legislature. This question has, however, already been presented to this court for consideration, and disposed of in accordance with the views here expressed. (*Sullivan* v. *Brewster*, 1 E. D. Smith, 681; *Donaldson* v. *O'Connor*, ib. 695; and *Miller* v. *Moore*, ib. 739.)

The notice of lien filed, and on which this action is predicated, alleges that the plaintiff has a "claim against John M. Catlin, and Catharine Ann, his wife, amounting to the sum of $923, and that the claim is made for and on account of work, labor and materials done and furnished towards the erection, completion and furnishing of a certain four story and basement brown stone front house; and that such work, labor and materials were done and furnished in pursuance of a contract or agreement with the said John M. Catlin, which building is owned by Catharine Ann Catlin," etc., etc.

It is insisted that the notice is defective, because the contract

was not stated to have been made with the owner, and because it does not appear on the face of the notice, that it was made with the owner. The complaint, however, alleges that Catharine Ann is the owner, and that the defendant, John M. Catlin, in making the contract, acted as her agent. These allegations are not denied by the answer, and are therefore admitted to be true.

The first section of the act of 1851 provides that, " Any person who shall hereafter, by virtue of any contract with the owner thereof, or *his agent,* in conformity with the terms of such contract, perform any labor or furnish materials, shall, upon filing the notice proscribed in the sixth section thereof, have a lien," etc. .

The sixth section referred to provides that " within six months after the performance of such labor, or the furnishing of such materials, the contractor, etc., shall serve a notice in writing upon the county clerk, specifying the amount of the claim, and the person against whom the claim is made, the name of the owner of the building, and the situation of the building by its street and number, if the number be known." It will be perceived on a perusal of that section that it does not require a statement of the name of the person with whom the contract was made, but of the person against whom the claim is made, and the name of the owner of the building. The notice filed contains these particulars, and is not vitiated by making a claim against the defendant, John M. Catlin, who, acting as agent, incurred no liability. That was unnecessary, and may be rejected as surplusage.

Whether this be so or not, however, it is evident that the statute was complied with, and the notice sufficient. I concede that if the person against whom the claim is made is neither the owner, his agent, nor his contractor, the lien would fail in his action. But such is not the case here.

The person against whom the claim is made beside the owner is admitted to be the agent of the owner; and to contracts by such an agent, as we have seen, the act extends. See section 1.

Whether Mrs. Catlin had power to make a contract which

would bind her as if a *feme sole*, it is not necessary for the purposes of this appeal to determine. The labor performed and materials furnished were for the benefit of her separate estate and established a claim resting in contract which a court of equity would enforce. (*Dyott* v. *North American Coal Co.*, 20 Wendell, 570–573.) The proceeding to enforce a lien is of an equitable character, per INGRAHAM, FIRST J. in *Owens* v. *Ackerson*, 1 E. D. Smith, 691, and embraces such a claim. See, also, *Randolph* v. *Leary*, special term of this court, March, 1857, and cases cited.(*a*)

The finding of the refereee as to the value of the work and materials is not against the weight of evidence, and cannot therefore be disturbed. The proof was peculiar, but sufficient to enable him to arrive at a fair valuation.

In reference to the suggestion that the plaintiff's recovery should be limited to work done and materials furnished, after the act of 1851 took effect, it may be proper to remark that there is nothing in the referee's report which will warrant us in determining what amount, if any, was allowed to the plaintiff for such work and materials. The amount reported due is so much less than the amount claimed as to justify a presumption that nothing was in fact so allowed. For these reasons, we cannot modify the judgment.

Judgment affirmed.